UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: CELSIUS NETWORK LLC

1:23-cv-10755-ALC

OPINION & ORDER

**ANDREW L. CARTER JR., United States District Judge**:

Appellant Richard Phillips, *pro se* creditor of Celsius Network LLC, et al., appeals to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 158 and the Federal Rules of Bankruptcy Procedure 8001-8005, from the United States Bankruptcy Court for the Southern District of New York's November 9, 2023 Findings of Fact, Conclusions of Law, and Order Confirming The Modified Joint Chapter 11 Plan of Celsius Network LLC And Its Debtor Affiliates [Docket No. 3972] (the "Order") and the October 11, 2023 Order Denying Richard Phillips Request [Docket No. 3765] (the "Denial").  ECF No. 1. Appellee Celsius Network LLC filed the instant motion to dismiss *pro se* creditor Richard Phillip's appeal arguing that he has failed to file an opening brief, as well as arguing that the appeal is equitably moot because the Plan has been substantially consummated. ECF No. 14. For the reasons set forth below, the Defendants' motion to dismiss is hereby GRANTED.

## STATEMENT OF FACTS

Prior to filing for chapter 11 bankruptcy in the Southern District of New York Bankruptcy Court, the Debtors operated a cryptocurrency platform called Celsius with over 600,000 retail investors. ECF No. 14 at ¶ 1. Celsius' users could deposit cryptocurrency with Celsius, earn rewards on those deposited assets, and take out loans from Celsius against the

1

cryptocurrency that they deposited with Celsius. *Id*. Following an extensive marketing and sale process, Celsius proposed a Plan that would, *inter alia*, (a) distribute Celsius' liquid cryptocurrency assets to its users and other creditors, (b) create a new company called "NewCo" or "MiningCo" that would reorganize Celsius' Bitcoin mining business and distribute the equity of that company to Celsius' creditors, and (c) pursue and monetize litigation claims, Causes of Action, certain illiquid assets, and distribute the resulting proceeds to Celsius' creditors, all under the direction of litigation administrators and the Litigation Oversight Committee. *Id*. at ¶ 3.

The Plan contains specific provisions regarding the Release and Exculpation of parties central to the formulation, negotiation, and execution of the Plan. *Id*. at ¶ 4. Furthermore, the Debtors contracted with Coinbase and PayPal to help distribute cryptocurrency to creditors pursuant to the Plan's provisions. *Id*. Distribution Agents also required that they be included in the Release and Exculpation provisions as a condition to undertaking the significant effort to distribute billions of dollars of cryptocurrency. *Id*. The Plan was approved by Celsius' creditors with an overwhelming majority, where each of the voting classes voted to accept the Plan by over 95% in both creditor number and dollar amount. *Id*. at ¶ 5. The Bankruptcy Court later determined that the Plan met the requirements for confirmation and confirmed the Plan, including the Release and Exculpation provisions. *Id*.; *see also* Confirmation Order ¶ 288.

## PROCEDURAL HISTORY

On December 11, 2023, Appellant Richard Phillips, *pro se*, filed the instant bankruptcy appeal pursuant to 28 U.S.C. § 158 and the Federal Rules of Bankruptcy Procedure 8001-8005, from the United States Bankruptcy Court for the Southern District of New York's November 9, 2023 Findings of Fact, Conclusions of Law, And Order Confirming The Modified Joint Chapter

11 Plan of Celsius Network LLC And Its Debtor Affiliates [Docket No. 3972] and the October 11, 2023 Order Denying Richard Phillips Request [Docket No. 3765]. ECF No. 1.

On April 12, 2024, the Appellee filed a motion to dismiss *pro se* creditor Richard Phillip's appeal. ECF No. 14. On April 16, 2024, Appellant filed a letter requesting an extension to the opening brief schedule, which was granted. ECF Nos. 15-16. To date, the Appellant has not filed their opening brief. On February 5, 2025, this Court ordered a briefing schedule in this action, where Appellant's opposition brief was due on February 26, 2025 and the Appellee's Reply was due on March 5, 2025. ECF No. 18. To date, the Appellant has not filed their opposition brief to the instant motion to dismiss. On March 5, 2025, Appellee filed a supplemental statement in further support of the instant motion to dismiss. ECF No. 19. On March 12, 2025, this Court ordered the Appellant to show cause as to why this Court shouldn't deem his opposition waived. ECF No. 20. The Appellant failed to submit a response; the Court deems his opposition waived.

**LEGAL STANDARD**

District courts have jurisdiction over appeals from the bankruptcy courts pursuant to 28 U.S.C. § 158(a). *See also* Fed. R. Bankr.P. 8013 ("On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."). This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and reviews conclusions of law *de novo. Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 989 (2d Cir.1990). The abuse of discretion standard is applied to the Bankruptcy Court's denial of a request to file untimely proofs of claim. *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),*

419 F.3d 115, 124 (2d Cir.2005); *see also In re BGI, Inc.*, No. 12 CIV. 7714 ALC, 2013 WL 10822966, at *5–6 (S.D.N.Y. May 22, 2013), aff'd, 772 F.3d 102 (2d Cir. 2014).

Equitable mootness is a prudential doctrine that permits reviewing courts to dismiss bankruptcy appeals when implementing effective relief would be inequitable based on the particular facts of a case. *R $^2$ Invs., LDC v. Charter Commc'ns (In re Charter Commc'ns, Inc.)*, 691 F.3d 476, 481 (2d Cir.2012); *Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official Comm, of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp .)*, 988 F.2d 322, 325 (2d Cir.1993) (*"Chateaugay I"*). In this context, equitable mootness "is concerned with whether a particular remedy can be granted without unjustly upsetting a debtor's [Chapter 11] plan.... [It] thus requires the district court to carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief." *Charter Commc'ns,* 691 F.3d at 481.

If a Chapter 11 plan has been substantially consummated, the appeal is presumed equitably moot in this Circuit. *Id.* at 482; *Frito–Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944, 952 (2d Cir.1993) (*"Chateaugay II"*). A plan has been substantially consummated when there is a transfer of all or substantially all of the property as proposed by the plan, the successor to the debtor has assumed the business or management of all or substantially all of the property, and distribution has commenced. 11 U.S.C. § 1101(2); *see also Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),* 416 F.3d 136, 144 (2d Cir.2005) ("[A] plan is 'substantially consummated' upon [i] transfer of substantially all of the property proposed by the plan to be transferred; [ii] the reorganized debtor's assumption of the debtor's business; and [iii] commencement of distribution under the plan."). The presumption of mootness, however, can be overcome if all five of the following

4

factors are met: (a) the court can still order some effective relief; (b) such relief will not affect 'the re-emergence of the debtor as a revitalized corporate entity'; (c) such relief will not unravel intricate transactions so as to 'knock the props out from under the authorization for every transaction that has taken place' and 'create an unmanageable, uncontrollable situation for the Bankruptcy Court'; (d) the 'parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings'; and (e) the appellant 'pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order ... if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from[.]' *Chateaugay II,* 10 F.3d at 952–53 (internal citations omitted). "Only if all five *Chateaugay* factors are met, and if the appellant prevails on the merits of its legal claims, will relief be granted." *Charter Commc'ns,* 691 F.3d at 482; *see also In re BGI, Inc.*, No. 12 CIV. 7714 ALC, 2013 WL 10822966, at *6 (S.D.N.Y. May 22, 2013), aff'd, 772 F.3d 102 (2d Cir. 2014).

**DISCUSSION**

This Court finds that the Appellant's appeal is equitably moot because the Plan has been substantially consummated. Here, Appellant Philips has not satisfied any of the *Chateaugay* factors. The instant appeal focuses on multiple issues related to the Bankruptcy Court's order, including (a) whether the Bankruptcy Court erred in denying him the opportunity to take additional fact witness depositions sixteen days after the deadline for such depositions; (b) whether the Release and Exculpation provisions in the Plan are overly broad, including whether such provisions should include a carve-out for the Debtors' and Committee's professionals; (c) whether the releases contained in the Plan were non-consensual, coercive releases; and (d) whether the Bankruptcy Court erred in allegedly prohibiting the Litigation Administrators and

Plan Administrator from pursuing actions against the Debtors' and the Committee's professionals. ECF No. 14 at ¶ 6.

First, the Appellant cannot show that effective relief is available. According to the Appellee, the Plan's underlying agreements have been executed, including billions of dollars of cryptocurrency that have been distributed in reliance on these agreements. *Id*. at ¶ 27. The New Board and Litigation Oversight Committee has also worked in accordance with the provisions of the Confirmation Order and the Plan. *Id*. Second, the Appellant cannot argue that the relief will not affect the re-emergence of the debtor as a revitalized corporate entity. If the Release and Exculpation provisions are modified, the Debtors would be subject to different terms than would have been agreed to in the Plan. *Id*. Third, the Release and Exculpation provisions cannot be carved out without modifying the transactions that overall arrangements spelled out in the Plan, including requiring Post-Effective Date Debtors to undo the careful negotiation and litigation that went into to developing and confirming the Plan. *Id*. at ¶¶ 28, 32. As of last year, the Debtors have made significant distributions under the Plan and distributions remain ongoing to creditors who are non-parties. *Id*. at ¶ 31; *see also In re Chateaugay Corp*., 988 F.2d 322, 326 (2d Cir. 1993) ("The Plan's numerous participants have presumably used the benefits they have received…The recoupment of these funds from them, in addition to being impracticable, would impose an unfair hardship on faultless beneficiaries who are not parties to this appeal.)

Fourth, the instant appeal seeks to modify the Release and Exculpation provisions provided to estate fiduciaries, Plan Sponsors, and groups of creditors who are essential to the Debtors' successful reorganization and who negotiated the distribution of the Debtors' Estates among competing creditor groups. *Id*. at ¶ 27. Indeed, these parties contributed significant equity capital to reorganized MiningCo, all relying on the carefully negotiated Release and Exculpation

provisions when agreeing to the various provisions in the Plan and voting to accept the Plan. *Id.* at ¶ 31. Finally, the Appellant did not seek to stay the execution of the Confirmation Order nor did he timely prosecute the instant appeal. *Id.* at ¶ 30. In the absence of any request for a stay, the question is not solely whether we *can* provide relief without unraveling the Plan, but also whether we *should* provide such relief in light of fairness concerns. *See Chateaugay II,* 10 F.3d at 952–53; *Chateaugay I,* 988 F.2d at 325; see also *In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 145 (2d Cir. 2005). Having sought no stay of the bankruptcy court's order (and no expedited appeal), appellants bear the burden of this uncertainty. *See Chateaugay I,* 988 F.2d at 326 ("The party who appeals without seeking to avail himself of that protection does so at his own risk."); *see also, e.g., Aetna Cas. & Sur. Co. v. LTV Steel Co.* (*In re Chateaugay Corp.*), 94 F.3d 772, 776 (2d Cir.1996) (noting in *dicta* that we "presume that it will be inequitable or impractical to grant relief after substantial consummation," unless, among other things, "the entity seeking relief has diligently pursued a stay of execution of the plan throughout the proceedings"); *Retired Pilots Assoc. of U.S. Airways, Inc. v. U.S. Airways Group, Inc.* (*In re U.S. Airways Group Inc.*), 369 F.3d 806, 810 (4th Cir.2004) (failure to seek a stay or expedited appeal "weighs strongly in favor of a finding of equitable mootness"); *TWA, Inc. v. Texaco, Inc.* (*In re Texaco Inc.*), 92 B.R. 38, 46 (S.D.N.Y.1988) ( "[T]here fairly exists a strong presumption that appellants' challenges have been rendered moot due to their inability or unwillingness to seek a stay." (quotation omitted)). Where Appellant Phillips did not request a stay, this Court declines to do so here.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**. The Clerk of Court is hereby directed to terminate all open motions and close the case.

7

**SO ORDERED.**

**Dated:  March 25, 2025**
       **New York, NY**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**